IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KAREN M. KIM,                           )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )          1:13-cv-838
                                        )
PATRICK R. DONAHOE,[1]                   )
Postmaster General,                      )
United States Postal Service,            )
                                        )
            Defendant.                   )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

        Plaintiff Karen M. Kim ("Ms. Kim") brings this action against her employer, the

United States Postal Service ("USPS"), alleging hostile work environment and retaliation in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a) (2012).[2]

Before the Court is USPS's Motion for Summary Judgment. (ECF No. 11.) The Court

heard oral argument on April 30, 2015. For the reasons below, the Court will grant

summary judgment for USPS on both claims.

---

[1] Megan J. Brennan replaced Patrick R. Donahoe as Postmaster General of the United States
Postal Service. Under Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Brennan is
automatically substituted as the defendant in this action. "[A]ny misnomer not affecting the
parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

[2] Title VII prohibits discrimination against federal employees as well as private employees.
See 42 U.S.C. § 2000e-16(a) (federal employees); § 2000e-2(a) (private employees). Although
these provisions appear in separate sections, the same standards apply. See Baqir v. Principi,
434 F.3d 733, 742 (4th Cir. 2006). The provision governing federal employees also
"'incorporate[s] the protections against retaliation' afforded to private employees." See
Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); § 2000e-3(a) (anti-retaliation provision).

# I.    BACKGROUND

Ms. Kim has worked for USPS for nearly forty years, beginning in 1975.  From 2004 to 2010, she worked as a Purchasing and Supply Management Specialist under the supervision of Team Leader Peter Nieradka ("Mr. Nieradka") in the Greenboro office.  The Greensboro office is a Headquarters-related field unit[3] with a small staff.   Starting in 2007, a series of incidents occurred that caused Ms. Kim to feel harassed, bullied, and singled out by her Team Leader, Mr. Nieradka, and at times by a coworker on her team, Pamela Scharffbillig ("Ms. Scharffbillig").[4]  According to Ms. Kim, these incidents created a hostile work environment based on sex.  Ms. Kim first complained about her alleged harassment to Mr. Nieradka's supervisor, Ann Mueller ("Ms. Mueller"), in June 2010.  Additional conversations between Ms. Kim and Ms. Mueller followed in the next several months.  In these meetings, Ms. Kim informed Ms. Mueller that she did not wish to be separated from Mr. Nieradka but rather requested that Ms. Mueller separate Mr. Nieradka and Ms. Scharffbillig, who shared an office at the time.  Ms. Mueller denied this request.

Between 2010 and 2013, Ms. Kim filed three formal complaints with the Equal Employment Opportunity ("EEO") branch of USPS.  Her first formal complaint, filed in

---

[3] USPS defines a "Headquarters-related field unit" as "an organizational entity that performs a major function or group of minor functions, reports directly to a Headquarters manager, and resides outside the Headquarters building."  USPS, Employee and Labor Relations Manual § 113.3(d) (2014), available at https://about.usps.com/manuals/elm/elmc1.pdf.

[4] Ms. Kim's Amended Complaint alleges harassment only by Mr. Nieradka.  However, the evidence supporting her hostile work environment claim describes many incidents involving Ms. Scharffbillig.  The Court does not consider Ms. Scharffbillig's conduct in evaluating Ms. Kim's claim but mentions her only for context.

November 2010, alleged sex discrimination, sexual harassment, hostile work environment, and retaliation for complaining to Ms. Mueller. (ECF No. 12-6.) This complaint resulted in the Equal Employment Opportunity Commission's ("EEOC") grant of summary judgment for USPS in September 2013. (ECF No. 12-12.) The second formal complaint, filed in May 2012, alleged retaliation for Ms. Kim's first formal complaint. (ECF No. 12-15.) USPS found no discrimination (ECF No. 12-16), which the EEOC affirmed in June 2013 (ECF No. 12-17.) Ms. Kim filed her final formal complaint in April 2013, alleging further retaliation for her previous EEO complaints. (ECF No. 12-19.) USPS issued a final decision in October 2013, again finding no discrimination. (ECF No. 12-20.) Ms. Kim has exhausted her administrative remedies and timely appeals the decisions of each formal complaint to this Court. USPS moves for summary judgment.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

3

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at 324.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "'resolve all factual disputes and competing, rational inferences in the light most favorable'" to the nonmoving party. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

## III. DISCUSSION

### A. Hostile Work Environment Claim

To defeat summary judgment on a hostile work environment claim, a plaintiff must establish a prima facie case by demonstrating that the harassing conduct was (1) unwelcome, (2) because of her sex, (3) "sufficiently severe or pervasive to alter the conditions of her

4

employment and create an abusive atmosphere," and (4) imputable to her employer. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–08 (4th Cir. 2014). USPS does not dispute that the harassment Ms. Kim experienced was unwelcome. Thus, the first element of the prima facie case is not at issue.[5] Rather, USPS argues that the Court should grant summary judgment on Ms. Kim's hostile work environment claim because she cannot establish that (1) the conduct she complains of is based on sex, (2) such conduct is sufficiently severe or pervasive, or (3) any discriminatory conduct would be imputable to USPS.

Ms. Kim describes several incidents of harassment that occurred between 2007 and 2010, while she was working under the supervision of Mr. Nieradka. The first incident occurred one evening in March 2007, when Mr. Nieradka yelled and swore at Ms. Kim over the phone for supposedly informing another employee that Mr. Nieradka would not attend a business trip. (Kim Dep. 30:23–31:1, ECF No. 13-1; First Investigative Aff. 21, ECF No. 13-2.) Ms. Kim next cites three incidents in 2008. First, in January, Mr. Nieradka sent her an email expressing his disappointment that she had not informed him of information related to a supplier. (First Investigative Aff. 40, ECF No. 13-2.) Second, later in the spring of 2008, Mr. Nieradka gave Ms. Kim permission to skip a teleconference but then reprimanded her and a male employee when they did not attend. (Id. at 23.) Third, in May 2008, Ms. Kim objected to some negative comments on her mid-year performance

---

[5] Irrespective of the fact that USPS does not challenge this element, Ms. Kim has met her burden of establishing the first element of the prima facie case. She has presented evidence that she repeatedly confronted Mr. Nieradka about his behavior and brought her complaints to Ms. Mueller. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 314 (4th Cir. 2008) (finding sufficient allegation of unwelcome conduct where employee complained to supervisors and coworkers).

evaluation. (Id. at 24.) Mr. Nieradka became angry and told Ms. Kim she had "no idea what he could do to [her] if he wanted to." (Id.) When Ms. Kim asked what he meant, he said she did not want to find out. (Id.) More than one year later, in August 2009, Mr. Nieradka emailed Ms. Kim after a teleconference, directing her to copy him on all of her emails. (Id. at 49.) He had become embarrassed during the teleconference when he did not have sufficient knowledge about a particular project, and he felt that Ms. Kim should have kept him informed. (Id.)

In addition to the five incidents outlined above, which spanned from 2007 to 2009, Ms. Kim cites several incidents in 2010. In January, Mr. Nieradka and Ms. Scharffbillig made a weather-related joke during a teleconference that Ms. Kim felt was "obviously directed" at her. (Id. at 52.) In May, Ms. Kim requested to take leave the day before her telecommute day, but Mr. Nieradka denied her request. (See id. at 85.) Instead, he asked her to either work on the day she requested off or come into the office on the day she typically telecommuted. (See id.) In June, Mr. Nieradka told Ms. Kim not to send text messages on her phone before the start of a meeting. (Id. at 28.) Voices were raised, and Ms. Kim became so upset that she left the meeting and left work early. (Id. at 29.) Later in June, Ms. Kim waited for Mr. Nieradka to return from vacation before updating him about a conversation. (Id.) Mr. Nieradka "came unglued and started ranting and raving," upset she did not inform him sooner. (Id.) In July, on the day of an important audit, Mr. Nieradka required all employees to come to the office but did not come to the office himself. (Id. at 30.) Ms. Kim, who had come to the office on her telecommute day, was upset Mr. Nieradka had taken leave and also postponed a project deadline without informing her. (Id.) A few

days later, Mr. Nieradka had an "outburst" loud enough for other employees in the office to hear.  (Id. at 30–31.)  A coworker's mother had passed away, and Mr. Nieradka was upset that Ms. Kim waited until the morning of the funeral to inform other employees, even though Ms. Kim had learned of the funeral the day before.  (Id.)

Additional incidents of alleged harassment include when Mr. Nieradka "ridiculed, demean[ed] . . . , [and] badgered" Ms. Kim and another female employee for arriving five or ten minutes late to work.  (Kim Dep. 25:15–17, ECF No. 13-1.)  He also told Ms. Kim "in a negative manner" that she reminded him of his wife, Loraine.  (First Investigative Aff. 4.)  Once when she approached his desk to speak with him, he cut her off and said, "ok Loraine just speak."  (Id.)  In the mornings, Mr. Nieradka and Ms. Scharffbillig sometimes made comments about Ms. Kim's hair and clothing as she walked by their office.  (Kim Dep. 27:18–22, ECF No. 13-1.)  They would ask, "Don't you even bother to comb your hair before you come into work?"  (Id.)  Finally, when Ms. Kim asked Mr. Nieradka why he harassed her, he responded, "[W]ell now that Wanda's gone you should have known you'd be next," referring to another female employee whom he allegedly harassed.  (First Investigative Aff. 4, ECF No. 13-2.)

1. *Conduct "Because of Sex"*

USPS asserts Ms. Kim has not provided evidence demonstrating that the harassment was because of sex.[6] A plaintiff is subject to discrimination because of sex if "but for" her sex, "she would not have been the victim of the discrimination." Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000). To establish sex-based harassment, a plaintiff need not show she was subjected to sexual advances or propositions. Id.; see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Rather, the critical question is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale, 523 U.S. at 80 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Ms. Kim asserts that "[t]he conduct towards Plaintiff was directed towards her because of her gender." (Pl.'s Opp'n 9, ECF No. 13.) As support for this assertion, she lists four allegedly discriminatory acts—unaccompanied by arguments, explanations, or case citations demonstrating how these acts were based on sex. (See id. at 9–10.) Specifically, Ms. Kim recites Mr. Nieradka calling her by his wife's name, commenting on her clothing, saying she "should have known [she]'d be next," and keeping an eye on when she arrived to work. (Id.) It is unclear how these acts are based on sex. Perhaps a reasonable jury could

---

[6] Although the terms "sex" and "gender" have different meanings, courts have used them interchangeably. See, e.g., Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), superseded by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1075, as recognized in Burrage v. United States, 134 S. Ct. 881 (2014); e.g., Ziskie v. Mineta, 547 F.3d 220 (4th Cir. 2008); Hartsell v. Duplex Prods., Inc., 123 F.3d 766 (4th Cir. 1997). In this opinion, the Court will follow the terminology of Title VII and use the term "sex" when discussing harassment because of sex. Harassment because of sex should not be misconstrued as sexual harassment, which is not an issue in this case.

find that if Ms. Kim were male, Mr. Nieradka would not have called her by his wife's name or said she reminded him of his wife. The remaining incidents that Ms. Kim complains of appear gender neutral, however, and Ms. Kim offers no evidence suggesting otherwise.

The record makes clear that Ms. Kim believes Mr. Nieradka treated male employees more favorably than female employees. (See First Investigative Aff. 4–5, 8, 11–12, ECF No. 13-2; Kim Dep. 25:10–24, 26:22–27:5, ECF No. 13-1.) While she is entitled to prove sex-based harassment by proving similarly situated male employees and female employees were treated differently, see Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007), Ms. Kim's evidence is insufficient to create a genuine dispute on this issue. To establish differential treatment, Ms. Kim alleges that one male employee was "late all the time" but never reprimanded and that another male employee was allowed to take leave before a telecommute day.[7] (See Pl.'s Opp'n 10, ECF No. 13; Kim Dep. 27:3–5, 29:11–13, ECF No. 13-1.) These allegations are grossly lacking in specificity, and Ms. Kim's "conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment." See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998); accord Gilliam, 474 F.3d at 142 (finding the plaintiff's "general statements of dissimilar treatment" insufficient when the statements contained "very few specifics" or specifics that were unsupported by evidence); Carter v. Ball, 33 F.3d 450, 461–62 (4th Cir. 1994) (declining to

---

[7] Although Ms. Kim names a specific male employee that she "think[s]" was allowed to take leave before a telecommute day, she acknowledges he was the only male in the office who telecommuted and he did not report to Mr. Nieradka. (Kim Dep. 27:1–5, 75:5–76:7, ECF No. 13-1.)

9

find racial harassment based on "general allegations" that a supervisor reprimanded the African-American plaintiff in public but spoke with white employees in private).

Ms. Kim has not presented sufficient evidence to demonstrate that any of Mr. Nieradka's allegedly harassing conduct was because of sex—except, perhaps, for his comment referencing his wife.

2. *"Severe or Pervasive" Conduct*

USPS also asserts Ms. Kim failed to offer evidence that the alleged harassment was severe or pervasive. The "severe or pervasive" element involves both subjective and objective components: not only must the plaintiff herself perceive the environment to be hostile or abusive, but that perception must also be reasonable. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). To determine objective reasonableness, the court must consider "all the circumstances," such as (1) how frequently the discriminatory conduct occurred; (2) how severe the conduct was; (3) whether the conduct was physically threatening or humiliating, or "a mere offensive utterance;" and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. Harris, 510 U.S. at 22–23. No single factor is dispositive. Sunbelt Rentals, 521 F.3d at 315. When satisfying the severe or pervasive test, "plaintiffs must clear a high bar." Id. "This standard is designed to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

USPS does not dispute Ms. Kim's subjective perception that her work environment was hostile and abusive.[8] Rather, USPS argues that Ms. Kim's allegations of harassment do not rise to the level of objectively severe or pervasive. As stated above, Ms. Kim cites only one incident that arguably occurred because of her sex: Mr. Nieradka addressing her by his wife's name.[9] This single incident does not clear the "high bar" of severe or pervasive conduct, as Ms. Kim has not shown that it was frequent, severe, physically threatening or humiliating, or an unreasonable interference with her work performance. While an isolated incident can violate Title VII, it must be "extremely serious," see Faragher, 524 U.S. at 788, which is not the case here. At best, Mr. Nieradka's comment represents the type of rude treatment, callous behavior, and occasional teasing that is excluded from Title VII's protection. See Sunbelt Rentals, 521 F.3d at 315–16 ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable under Title VII." (alterations in original) (citations omitted) (internal quotation marks omitted)); Ocheltree, 335 F.3d at 333.

---

[8] Ms. Kim describes feeling humiliated, frustrated, stressed, and angry when Mr. Nieradka and Ms. Scharffbillig "screamed . . . and lashed out" at her. (First Investigative Aff. 13, ECF No. 13-2); see Harris, 510 U.S. at 23 (recognizing "[t]he effect on the employee's psychological well-being is . . . relevant to determining whether the plaintiff actually found the environment abusive"). Further, Ms. Kim sometimes felt physically sick at the thought of interacting with Mr. Nieradka and Ms. Scharffbillig, prompting her to call in sick or leave work early to avoid them. (First Investigative Aff. 13, 25, ECF No. 13-2.)

[9] At oral argument, Ms. Kim's attorney stated that Mr. Nieradka made this comment only once.

Even if the remaining conduct that Ms. Kim complains of was directed toward her because of her sex, Ms. Kim would still fail the severe or pervasive element of the prima facie case. When a supervisor asks an employee to keep him informed of her work, denies her request to text during a meeting, reprimands her for arriving late to work, and requires her to come to the office on her usual telecommute day, a reasonable jury could not find this routine supervisory behavior to be hostile or abusive. See Wiggins v. DaVita Tidewater, LLC, 451 F. Supp. 2d 789, 801 (E.D. Va. 2006) (concluding that no reasonable person could characterize disciplinary warnings for being late to work as harassment). When he permits an employee to skip a teleconference but later reprimands her for skipping, when he requires all employees to work from the office but takes leave himself, and when he neglects to inform an employee of a postponed deadline, a reasonable jury could find his behavior inconsiderate but not hostile or abusive. See Patton v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002) (holding that a supervisor's failure to keep the plaintiff informed about changes at work, among other things, fell "far short of creating an actionable hostile work environment"). Similarly, when he tells a joke that may or may not relate to an employee, comments on an employee's appearance in a nonsexual manner, or yells and swears when he is angry, his behavior may be callous and rude, but callous and rude behavior does not give rise to a Title VII claim. See Sunbelt Rentals, 521 F.3d at 315–16; Holleman v. Colonial Heights Sch. Bd., 854 F. Supp. 2d 344, 353 (E.D. Va. 2012) (finding general complaints about a school principal's "cursing, yelling, and reprimanding" not sufficiently severe or pervasive). Ms. Kim has not demonstrated that these acts of alleged harassment were severe, physically threatening or humiliating, or an unreasonable

12

interference with her work performance.  She has also not demonstrated that the alleged

harassment—consisting of a dozen incidents spanning three and a half years, with as much

as a year between incidents—occurred frequently.[10]  See Hopkins v. Balt. Gas & Elec. Co.,

77 F.3d 745, 753 (4th Cir. 1996) (finding intermittent incidents over a seven-year period,

with gaps as great as a year, to "suggest[] the absence of a condition sufficiently pervasive

to establish Title VII liability").  As the Fourth Circuit has recognized, "[E]ven incidents that

would objectively give rise to bruised or wounded feelings will not on that account satisfy

the severe or pervasive standard.  Some rolling with the punches is a fact of workplace life."

Sunbelt Rentals, 521 F.3d at 315.  While a reasonable jury could conclude that Mr. Nieradka

behaved in a hostile and abusive manner when he told Ms. Kim she had "no idea what he

could do to [her] if he wanted to" and she "should have known [she]'d be next," these

isolated incidents are insufficient to create a hostile work environment.  See Faragher, 524

U.S. at 788 (explaining that "isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment'").

Ms. Kim's evidence of alleged harassment is insufficient for a reasonable jury to find

that the conduct was objectively severe or pervasive.  Although Ms. Kim correctly asserts

that the question of whether harassment is sufficiently severe or pervasive is

"'quintessentially a question of fact' for the jury" (Pl.'s Opp'n 10–11, ECF No. 13 (quoting

---

[10] Ms. Kim also complains that Mr. Nieradka reprimanded her for arriving late to work and
commented on her appearance, but she does not specify when or how often this occurred.
This evidence does not suggest frequent conduct.  See EEOC v. Xerxes Corp., 639 F.3d
658, 677 (4th Cir. 2011) (finding general statements that a coworker made racial slurs "a
bunch of different times" and "[n]ot one occasion" insufficient to sustain a claim of hostile
work environment (alteration in original)).

Conner v. Schrader-Bridgeport Int'l Inc., 227 F.3d 179, 199–200 (4th Cir. 2000))), she must first produce sufficient evidence to create a question for the jury. See Liberty Lobby, 477 U.S. at 249 (stating that a genuine issue for trial exists only when there is "sufficient evidence favoring the nonmoving party" so that a jury could return a verdict for that party). Ms. Kim's evidence does not clear this hurdle.

### 3. *Employer Liability*

USPS next asserts that there is no basis for imputing liability to USPS. To impute liability for a hostile work environment to an employer, some basis for liability must exist. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001). Because Ms. Kim has failed to establish the second and third elements of her prima facie case, there is no hostile work environment for which USPS would be liable.

## B. Retaliation Claim

To defeat summary judgment on a retaliation claim, a plaintiff must first establish a prima facie case by demonstrating that (1) she engaged in a protected activity, (2) her employer took a materially adverse action against her, and (3) the protected activity was a but-for cause of the materially adverse action rather than simply a motivating factor. See Walker, 775 F.3d at 210. USPS does not dispute that Ms. Kim engaged in a protected activity under Title VII's anti-retaliation provision when she made complaints to Ms. Mueller

14

and the EEO branch of USPS.[11]  Rather, it challenges the sufficiency of Ms. Kim's evidence on the remaining two elements.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to her employer to articulate a legitimate, nondiscriminatory reason for its actions.  Smith, 202 F.3d at 248 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  The plaintiff then has an opportunity to "demonstrate that the employer's reason was mere pretext for retaliation by showing 'both that the reason was false and that discrimination was the real reason for the challenged conduct.'"  Id. (quoting Jiminez v. Mary Wash. Coll., 57 F.3d 369, 377–78 (4th Cir. 1995)).  Only by demonstrating pretext can the plaintiff defeat summary judgment.  See King v. Rumsfeld, 328 F.3d 145, 154 (4th Cir. 2003) (affirming the district court's grant of summary judgment because the plaintiff failed to establish that his employer's legitimate, nondiscriminatory motive was pretext).  At all times, the plaintiff bears the ultimate burden of persuading the court that the defendant intentionally discriminated against her.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Ms. Kim asserts six acts of retaliation, which she alleges to be materially adverse actions.  In August 2010, after Ms. Kim complained to Ms. Mueller, Ms. Mueller offered Ms. Kim a detail assignment that would temporarily remove her from Mr. Nieradka's supervision.  (First Investigative Aff. 9, ECF No. 13-2.)  The assignment did not involve

---

[11] An employee engages in protected activity when she opposes any employment practice prohibited by Title VII or when she pursues or assists in a Title VII investigation, proceeding, or hearing.  42 U.S.C. § 2000e-3(a).  Opposing prohibited conduct includes complaining to superiors about suspected Title VII violations, Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543–44 (4th Cir. 2003), as Ms. Kim has done through her complaints to Ms. Mueller.

relocation or a salary change, but instead of reporting to Mr. Nieradka, Ms. Kim reported to a supervisor in Washington, DC. (Id. at 9, 32–33; Mueller Decl. ¶ 19, ECF No. 12-21.) Ms. Kim initially viewed the assignment as punishment for complaining, but she appears to have accepted the assignment when Ms. Mueller presented it as an opportunity to acquire new skills and advance her career. (First Investigative Aff. 10, ECF No. 13-2.) Two days before the detail assignment was set to start, Ms. Kim learned the assignment would involve tasks that she believed were beneath her skill level and requested to be removed from the assignment. (Id. at 9, 33.) Ms. Mueller told her she "had no choice" but to take the assignment. (Id.) Ms. Kim views this detail assignment as "involuntary" and cites it as USPS's first act of retaliation. (Am. Compl. ¶ 110, ECF No. 2.)

Despite the lower-level work, Ms. Kim was still willing to accept the detail assignment if she could have two additional telecommute days. (First Investigative Aff. 33, ECF No. 13-2.) Her new supervisor denied this request, and her detail assignment began the following day. (Id.) She claims the denial of additional telecommute days was USPS's second act of retaliation. (Am. Compl. ¶ 112, ECF No. 2.)

In November 2011, Ms. Kim received a rating of 4 on her 2011 performance evaluation. (ECF No. 12-42, at 5.) At this time, she had completed her detail assignment and was under the supervision of Eric Beck, who rated her performance for 2011.[12] Ms. Kim objected to this rating, claiming that coworkers received higher ratings for performing

---

[12] Annual USPS performance evaluations separate employees into four categories: a rating of 1 to 3 means an employee is a "Non-contributor," 4 to 9 means "Contributor," 10 to 12 means "High Contributor," and 13 to 15 means "Exceptional Contributor." (See ECF No. 12-42, at 5.) A rating of 4 placed Ms. Kim on the low end of the "Contributor" category.

the same amount of work or less work. (Second Investigative Aff. 3, ECF No. 13-3.) As

her attorney explained at oral argument, Ms. Kim felt her work was not being recognized by

her supervisor. She cites this rating as USPS's third act of retaliation. (Am. Compl. ¶ 120,

ECF No. 2.)

In April 2012, Ms. Mueller issued Ms. Kim a Letter of Warning (ECF No. 12-30) for

saying to her then-supervisor, Mr. Beck, "I think you bully me and have a Hitler like

management style." (Second Investigative Aff. 10, ECF No. 13-3.) After Ms. Kim appealed

the letter, the USPS Vice President of Labor Relations removed the letter from her file.[13]

(ECF No. 12-50.) Ms. Kim claims the letter was USPS's fourth act of retaliation. (Am.

Compl. ¶ 121, ECF No. 2.)

In November 2012, Ms. Kim received a rating of 5 on her 2012 performance

evaluation from Mr. Beck (ECF No. 12-43, at 7), though she felt she deserved a higher

rating (Third Investigative Aff. 7, ECF No. 13-4). Ms. Kim also takes issue with Mr. Beck's

written statements that she had "communicated on more than one occasion information she

knew was not correct" and that he "would like to see her able to take on more complex

projects without assistance." (Third Investigative Aff. 5–6, ECF No. 13-4.) Ms. Kim claims

these statements are "derogatory and false" (id. at 5) and points to her performance rating

and Mr. Beck's comments as USPS's fifth act of retaliation (Am. Compl. ¶ 127, ECF No. 2).

---

[13] The Letter of Warning stated Ms. Kim had caused a work disruption and distraction when
she called Mr. Beck a "bullying Hitler." (ECF No. 12-30.) On appeal, the Vice President of
Labor Relations found the record did not support these assertions, as the meeting took place
in a private office and Ms. Kim's remark was in response to a question. (ECF No. 12-50.)

In late 2012 and early 2013, Ms. Kim applied for a higher-level position but was not selected. (Third Investigative Aff. 10, 12, ECF No. 13-4.) On the USPS pay scale, the higher-level position was at Level 23, while Ms. Kim was working in a Level 21 position at the time. For the Level 23 position, Ms. Mueller selected an individual who had a college degree, unlike Ms. Kim. (Mueller Decl. ¶¶ 49, 51, ECF No. 12-21.) Ms. Kim asserts she was better qualified than the selected individual. (Third Investigative Aff. 14, ECF No. 13-4.) She claims that not selecting her for the Level 23 position was USPS's sixth act of retaliation. (Am. Compl. ¶ 128, ECF No. 2.)

### 1. Materially Adverse Actions

USPS argues that Ms. Kim cannot show she suffered a materially adverse action, except for when she was not selected for a Level 23 position. An employee suffers a materially adverse action when her employer takes some action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). The action must produce an injury or harm; "petty slights" and "minor annoyances" are insufficient. See id. at 67–68.

USPS concedes—and Ms. Kim has provided sufficient evidence for a reasonable jury to conclude—that her unsuccessful application for the Level 23 position constituted a materially adverse action. Ms. Kim's evidence is insufficient, however, to establish that the remaining acts of alleged retaliation are materially adverse actions. While courts have acknowledged that negative performance evaluations and letters of reprimand can be materially adverse, see Westmoreland v. Prince George's Cty., Md., No. 09-CV-2435 AW,

18

2013 WL 6629054, at *5 (D. Md. Dec. 17, 2013); <u>Bittle v. Elec. Ry. Improvement Co.</u>, 576 F. Supp. 2d 744, 754 (M.D.N.C. 2008), Ms. Kim has failed to demonstrate material adversity in this case.[14] She has not shown how the performance evaluations and Letter of Warning produced an injury or harm—particularly where her performance ratings were no worse and no better than the ratings she received before she engaged in protected activity[15] and where USPS ultimately removed the Letter of Warning from her file. Ms. Kim has also not shown injury or harm resulting from the denial of additional telecommute days.[16] Finally, while Ms. Kim viewed her detail assignment as a form of punishment, a reasonable jury could not find Ms. Mueller's refusal to let her back out of the assignment on two days' notice to be so harmful as to dissuade a reasonable employee from complaining of discrimination.

---

[14] Ms. Kim's opposition brief includes a single conclusory statement regarding her performance evaluations and Letter of Warning: "Plaintiff suffered an additional adverse employment action following her initial EEO filings when she received lower rating [sic] on her performance evaluation, [and] received a letter of warning . . . ." (Pl.'s Opp'n 16, ECF No. 13.)

[15] Ms. Kim complains of her ratings of 4 and 5 in 2011 and 2012, respectively, but she received poor performance ratings even before she made any complaints of discrimination. In 2008, she received a rating of 4, and in 2009, she received a rating of 3. (First Investigative Aff. 67, 73, ECF No. 13-2.) Although she received a rating of 7 in 2010, this was one point below the average rating of 8 in 2010, just as her ratings in 2011 and 2012 were each less than one point below the average ratings in those years. (See Mueller Decl. ¶¶ 27, 40, 42, ECF No. 12-21.)

[16] Ms. Kim does not mention the denial of additional telecommute days in the discussion of materially adverse actions in either her opposition brief or her oral argument. Moreover, Ms. Kim was granted the same number of telecommute days on her detail assignment as the rest of the staff working under her supervisor. (See ECF No. 12-22, at 10.)

2. *Causation*

USPS next argues that Ms. Kim has not presented sufficient evidence to establish a causal link between her protected activity and her unsuccessful application for the Level 23 position, the only materially adverse action in this case. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013). To establish but-for causation, a plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2533.

Ms. Kim's evidence is insufficient for a reasonable jury to conclude that if she had not complained of a hostile work environment, then USPS would have selected her for the Level 23 position. To the contrary, the evidence indicates that USPS declined to hire Ms. Kim for Level 23 positions long before she made any complaints of discrimination. By the summer of 2007—three years before her first complaint—Ms. Kim already felt "totally frustrated" that she had not secured a Level 23 position, particularly because she felt more qualified than the candidates who were selected instead.[17] (See First Investigative Aff. 39, ECF No. 13-2.) She was also discontent with management's "usual reason" for not selecting her: that she did not have a college degree. (See id.) Over the next six years, however, Ms.

---

[17] Ms. Kim's frustration prompted her to visit USPS headquarters in Washington, DC, "to discuss the hiring, promotion and selection practices" within her department. (First Investigative Aff. 38, ECF No. 13-2.) In a follow-up email, Ms. Kim explained, "I feel strongly that . . . I should have been able to acquire one of the promotions from within this office. . . . [M]y patience is running thin when time and time again I see individuals with less qualifications getting the positions in this office." (Id. at 39.)

Kim continued to apply for Level 23 positions, including in May 2008, June 2011, July 2011, and November 2012.  (See ECF No. 12-11, at 1; First Investigative Aff. 24, ECF No. 13-2; Third Investigative Aff. 10, ECF No. 13-4.)  USPS continued to cite Ms. Kim's lack of degree as a reason for not selecting her.  (See Mueller Decl. ¶¶ 48–49, ECF No. 12-21.)  In total, Ms. Kim estimates she has applied unsuccessfully for at least five Level 23 positions (Kim Dep. 113:15–21, ECF No. 13-1), starting years before her first complaints of discrimination.  Given this evidence, a reasonable jury could not conclude that Ms. Kim's protected activity was the but-for cause of USPS selecting a different candidate for the Level 23 position at issue in this case.  Ms. Kim has therefore failed to state a prima facie case of retaliation, and the Court need not consider the burden-shifting analysis set forth in McDonnell Douglas, 411 U.S. at 802.

## IV.    CONCLUSION

Ms. Kim has failed to raise a genuine dispute of material fact as to any issue in this case. USPS has demonstrated that it is entitled to judgment as a matter of law on both claims in that Ms. Kim has failed to provide evidence to establish essential elements of her claims.

## ORDER

IT IS ORDERED that Defendant USPS's Motion for Summary Judgment (ECF No. 11), is GRANTED and that this action shall be dismissed with prejudice.

A Judgment granting USPS's Motion and dismissing this action will be entered contemporaneously with this Order.

This, the 8th day of May, 2015.

    /s/ Loretta C. Biggs
United States District Judge
